## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

DISTRICT OF NH

FILED

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DARREN B. STRATTON | ) |

2018 JUL 23 P 6: 09

No. 1:18-cr 24 HOUR DEPOSITORY

18-CR-114-LM-01

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by Scott W. Murray, United States Attorney for the District of New Hampshire, and Assistant U.S. Attorney John S. Davis, and the defendant, Darren B. Stratton, and the defendant's attorney, Tyler Pentoliros, Esquire, enter into the following Plea Agreement:

1. The Plea and The Offense.

The defendant agrees to waive his right to have this matter presented to a grand jury and plead guilty to an Information charging him with Conspiracy, in violation of Title 18, United States Code, Section 371.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2. The Statute and Elements of the Offense.

Title 18, United States Code, Section 371, provides, in pertinent part:

If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

The defendant understands that the offense has the following elements, each of which the

- 1 -

United States would be required to prove beyond a reasonable doubt at trial:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to unlawfully traffic in prescription animal drugs;

Second, that the defendant willfully joined in that agreement; and

Third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.

[*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2017 Revisions,* Instruction 4.18.371(1), http://www.med.uscourts.gov/pdf/crpjilinks.pdf.]

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

From at least in or about at least January 2017 through at least in or about September 2017 (the "relevant time period"), Horsemen's Tack, Inc., was located at 3 Puzzle Lane, Unit 3, Newton, NH.   The defendant, Darren B. Stratton ("Stratton"), was employed by Horsemen's Tack and worked out of the Newton location.   Among the products Stratton sold to certain customers were equine drugs that were sold without a required prescription.   Another Horsemen's Tack employee, DM, worked as a traveling salesman for the company, and developed a list of customers for the prescription animal drugs. Stratton and Horseman's Tack sold prescription animal drugs to these customers in a manner that defrauded and misled the company's drug suppliers, federal and state regulators, and the general public.

Although the website for Horsemen's Tack indicated that the business had a "vet on call,"

- 2 -

in fact there was no vet on call.   Horsemen's Tack had a long-standing relationship with Dr. AB, a veterinarian licensed in New Hampshire.   Stratton regularly used Dr. AB's name and veterinary license to order various prescription animal drugs from mail-order pharmacies.   In those instances, Dr. AB, who never visited the Newton store, did not examine horses or meet with horse owners, and provided no actual veterinary services.   Both Stratton and DM, the traveling salesman who worked for Horsemen's Tack, knew that Dr. AB provided no actual veterinary services to Horsemen's Tack, and that Horsemen's Tack was using Dr. AB's name and license to purchase prescription drugs for resale to customers without prescriptions.

Stratton and Horsemen's Tack marketed, sold, and distributed prescription animal drugs for performance-enhancement in racehorses, including levothyroxine, estrone, amikacin, methocarbamol, dexamethasone, tranexamic acid, and erythropoietin/EPO.   During the relevant time period, these prescription animal drugs were not specifically listed for sale on Horsemen's Tack's website, www.horsemenstackinc.com.   Instead, in order to avoid detection by law enforcement and/or regulators, Stratton and Horsemen's Tack distributed hard-copy pricing lists for these performance-enhancing prescription drugs only to "trusted customers," who could then order them from Stratton and Horsemen's Tack without prescriptions.

During the relevant time period, Stratton and Horsemen's Tack dispensed various prescription animal drugs to customers without requiring a lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice, including levothyroxine, estrone, amikacin, methocarbamol, dexamethasone and tranexamic acid.   At the time of dispensing, these prescription animal drugs, or components thereof, had been previously shipped in interstate commerce and were being held for sale in New Hampshire by Stratton and

- 3 -

Horsemen's Tack.   Specifically, on or about April 26, 2017, June 20, 2017, and August 9, 2017, Stratton and Horsemen's Tack dispensed to customer E.M. the prescription animal drug levothyroxine without a lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice, which is an act deemed to misbrand the drug while held for sale pursuant to 21 U.S.C. § 353(f)(1)(C).

        Although most of the drugs were sold in person at the Newton store, Stratton shipped some of the drugs to customers via UPS or FedEx. During the relevant time period, Stratton and Horsemen's Tack shipped to customers located outside of New Hampshire various prescription animal drugs, including levothyroxine, estrone, amikacin, methocarbamol, dexamethasone and tranexamic acid, whose respective labels did not bear: the required statement "Caution:   Federal law restricts this drug to use by or on the order of a licensed veterinarian"; the recommended and usual dosage; and the quantity and proportion of each active ingredient.   Specifically, on or about April 26, 2017, June 20, 2017, and August 9, 2017, Stratton and Horsemen's Tack shipped from New Hampshire to customer E.M. in New York the prescription animal drug levothyroxine with labels that did not bear the required statement "Caution:   Federal law restricts this drug to use by or on the order of a licensed veterinarian"; the recommended and usual dosage; and the quantity and proportion of each active ingredient, and thus, the levothyroxine was misbranded within the meaning of 21 U.S.C. § 352(f)(1).

        During the relevant time period, Stratton and Horsemen's Tack also shipped to customers located outside of New Hampshire the prescription animal drug erythropoietin/EPO in entirely unlabeled bottles.   Specifically, on or about July 29, 2017, Stratton and Horsemen's Tack shipped from New Hampshire to customer E.L. in Massachusetts the prescription animal drug

- 4 -

erythropoietin/EPO in an unlabeled bottle, and thus, the erythropoietin/EPO was misbranded within the meaning of 21 U.S.C. § 352(f)(1).

On September 20, 2017, agents executed a federal search warrant at Horsemen's Tack at 3 Puzzle Lane, Unit 3, Newton, New Hampshire.   Among the items recovered were a customer list, prescription drugs, and numerous vials with labels printed on-site.   On the same day, Stratton was interviewed, and admitted that Horsemen's Tack sold prescription drugs to horse owners and trainers without obtaining prescriptions from those customers.

4.   Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A.      A maximum prison term of 5 years (18 U.S.C. § 371);

B.      A maximum fine of $250,000 (18 U.S.C. § 3571);

C.      A term of supervised release of not more than 3 years (18 U.S.C. § 3583). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D.      A mandatory special assessment of $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).

In addition to the other penalties provided by law, the Court may order him to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

5.   Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea

- 5 -

Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation

Office shall:

A.   Advise the Court of any additional, relevant facts that are presently known
or may subsequently come to their attention;

B.   Respond to questions from the Court;

C.   Correct any inaccuracies in the pre-sentence report;

D.   Respond to any statements made by him or his counsel to a probation
officer or to the Court.

The defendant understands that the United States and the Probation Office may address the

Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable

sentencing range under the advisory Sentencing Guidelines that he may have received from any

source is only a prediction and not a promise as to the actual sentencing range under the advisory

Sentencing Guidelines that the Court will adopt.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and

agree to the following:

(a)   U.S.S.G. § 2B1.1 is the applicable offense guideline;

(b)   The loss amount applicable to defendant Stratton, based on the amount
Horsemen's Tack paid for prescription drugs during the period January 1,
2017, to September 20, 2017, is $84,772;

(c)   The adjustment in U.S.S.G. § 2B1.1(b)(2) does not apply;

- 6 -

(d)     The aggravating role adjustment in U.S.S.G. § 3B1.1 does not apply;

(e)     The government will recommend that defendant Stratton be sentenced at the low end of the applicable guideline range as determined by the Court; and

(f)     If defendant's sentencing range is within Zone B of the Sentencing Table, the government will recommend that the minimum term be satisfied by a sentence of probation that includes a condition that substitutes home detention for imprisonment pursuant to U.S.S.G. § 5C1.1(c)(3).

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.  Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's

- 7 -

apparent prompt recognition and affirmative acceptance of personal responsibility for the offense.

The United States, however, may oppose any adjustment for acceptance of responsibility if the

defendant:

      A.      Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

      B.      Challenges the United States' offer of proof at any time after the plea is entered;

      C.      Denies involvement in the offense;

      D.      Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

      E.      Fails to give complete and accurate information about his financial status to the Probation Office;

      F.      Obstructs or attempts to obstruct justice, prior to sentencing;

      G.      Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

      H.      Fails to appear in court as required;

      I.      After signing this Plea Agreement, engages in additional criminal conduct; or

      J.      Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any

of the reasons listed above, the United States does not recommend that he receive a reduction in his

sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the

offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.   To plead not guilty or to maintain that plea if it has already been made;

B.   To be tried by a jury and, at that trial, to the assistance of counsel;

C.   To confront and cross-examine witnesses;

D.   Not to be compelled to provide testimony that may incriminate him; and

E.   To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

- 9 -

9. Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.   Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.   Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.   Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.   Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.   Is completely satisfied with the representation and advice received from his undersigned attorney.

10.   Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.   Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to

the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible, or ending his naturalization. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12.   <u>Satisfaction of Federal Criminal Liability; Breach</u>.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the information in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13.   <u>Waivers</u>.

A.  Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily

waives his right to challenge on direct appeal:

1.    His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.  Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.    His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in

- 12 -

Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.  No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15.  Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16.  Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void

- 13 -

and no part of it may be enforced.

SCOTT W. MURRAY
United States Attorney

Date: 7/23/18

By:

John S. Davis
Assistant United States Attorney
Bar Association #592
53 Pleasant St., 4th Floor
Concord, NH 03301
John.davis8@usdoj.gov

The defendant, Darren B. Stratton, certifies that he has read this 14-page Plea Agreement and that he fully understands and accepts its terms.

Date: 7/16/2018

Darren B. Stratton, Defendant

I have read and explained this 14-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 7/18/2018

Tyler Pentoliros, Esquire
Attorney for Darren B. Stratton

- 14 -